IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT A. KAYLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 2:05-CV-383-W |

## MEMORANDUM OPINION

### I. Introduction.

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

and entry of a final judgment by the United States Magistrate Judge (docs. 8-9, filed June 10, 2005). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**

The plaintiff was thirty-four years old at the time of the hearing before the ALJ and has a ninth grade education.  The plaintiff's prior work experience includes work as a

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

mechanic, welder, general laborer, bull rider, and heavy equipment operator. Following the administrative hearing, the ALJ concluded that the plaintiff had the following severe impairments: breathing problems, back pain, pain in the left ankle, depression, and anxiety. Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff had the residual functional capacity to perform light work with certain restrictions, including work as an inspector, assembler, or machine operator.

## B.  Plaintiff's Claims

The plaintiff presents two issues for review: (1) whether the ALJ improperly weighed the opinions of several medical sources, and (2) whether the ALJ improperly failed to order consultative tests and X-rays of the plaintiff's back.

## IV. Discussion

## A. Medical Source Opinions

### 1. Dr. Workman's Opinion

On May 15, 2002, the plaintiff received a consultative physical examination from Dr. Ronald Workman (R. 21, 221-25). The ALJ correctly noted that "Dr. Workman found no limitations in the claimant performing light work activity" (R. 21). The plaintiff complains that the ALJ ignored Dr. Workman's statement that "[g]iven [the plaintiff's] limited education and lack of literacy, his options for employment are limited" (R. 225), and thereby improperly failed to consider and weigh Dr. Workman's opinion.

The effect of illiteracy on the plaintiff's employability is a vocational, not a medical,

4

issue, and Dr. Workman's opinion on the subject was entitled to no particular weight.[4] However, contrary to the plaintiff's assertion, the ALJ did note this finding (R. 21). More importantly, the ALJ heard testimony from a vocational expert, and in his hypothetical question listed "oral, as opposed to detailed written instructions" as a limitation (R. 386). He explicitly took the plaintiff's illiteracy into account in reaching his conclusions (R. 26, 27). The decision of the ALJ is not due to be reversed on this ground.

2. Dr. Strickler's Opinion

On June 9, 2003, at the request of his attorney, the plaintiff received a physical examination from Dr. Howard Strickler (R. 22, 243-45). Dr. Strickler offered the opinion that the plaintiff was unsuited for "any level of work activity" (R. 22, 245). The plaintiff implicitly argues that the ALJ failed to weigh Dr. Strickler's opinion properly (pl. br. 7-8). However, Dr. Strickler's findings were based on the plaintiff's alleged back and ankle problems, which the ALJ discussed (R. 21-22, 25). He rejected Dr. Strickler's opinion because it appeared "inconsistent with the substantial evidence of record and [was] not supported by specific and complete medically acceptable clinical findings and electrodiagnostic techniques" (R. 25). Specifically, the ALJ noted Dr. Workman's report, which stated that the plaintiff had normal gait; no need for an assistive device; no difficulties with squatting, rising, sitting, standing, or walking; no swelling; no paravertebral muscle spasms; and a back exam "largely within normal limits" (R. 25, 223-24). Independent review

---

[4] Under 20 C.F.R. § 404.1527(e)(2) and (3), the "application of vocational factors" is an issue reserved to the Commissioner, and the Administration gives no special significance to a source opinion on the subject.

suggests that Dr. Strickler's opinion was based on the plaintiff's subjective complaints of pain (R. 244),[5] which the ALJ properly discounted (R. 25).  The decision of the ALJ is not due to be reversed on this ground.

3.  Psychiatrists' Opinions

The record contains the result of a consultative psychiatric test in June, 2002, after which the psychiatrist (Dr. Elizabeth Cates) found that the plaintiff was malingering (R. 21-22, 226-28).  The record also shows that the plaintiff received psychiatric care at the Clinton-Shelby Mental Health Center starting in July 2003, and continuing at least through February 2004, after which he was sentenced to thirty-three months in prison for possession of pseudoephedrine in violation of 21 U.S.C. § 841(c)(2) and conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846 (*United States v. Kaylor*, No. 03-CR-329 (N.D. Ala. 2004)).  The records of the plaintiff's treatment are extensive (R. 251-336).  Most of these are signed by Dr. Shakil Khan, by Deborah Sack, L.P.C.,[6] or by Elaine Russell, Ed.S., N.C.C.[7]   Dr. Khan's report from July 2003 suggests that the plaintiff may have

---

[5] Dr. Strickler's report is somewhat sparse, but it states that the plaintiff "experienced back pain" while performing manual dexterity, isotonic lifting, and postural screening exercises, and was not able to complete any of the exercising except for balancing and climbing (R. 244).  Except for the plaintiff's self-reported history (R. 243), the report shows no other basis for his finding that the plaintiff "is not suited for any level of work activity."  Of course, under 20 C.F.R. § 404.1527(e)(2) and (3), the determination of whether the plaintiff can work is an issue reserved to the Commissioner, and the Administration gives no special significance to a source opinion on the subject.

[6] Licensed Professional Counselor.  The record does not state whether Sack has a medical degree.

[7] Education Specialist, National Certified Counselor.  The record does not state whether Russell has a medical degree.

suffered from listing-level depression at that time.[8]   The plaintiff argues that the ALJ, in finding him not disabled, improperly discounted the opinion of his treating psychiatrists.

After discussing the evidence regarding this treatment (R. 22-23), the ALJ articulated his findings as follows:

> The claimant also maintains that he can not work on account of psychiatric based problems....Up until July 2003, the evidence of record demonstrated no problems or treatment for a debilitating mental condition. Dr. Cates reported in July 2002 that the claimant seemed to be trying to present himself as mentally disturbed and gave a diagnosis of "<u>malingering</u>." She opined that the claimant did not have a severe mental impairment and should be able to maintain substantial gainful employment without difficulty [R. 226-28]. The medical evidence of record reflects that the claimant had some legal, custodial and family difficulties issues in July 2003,[9] which required crisis intervention and treatment at a mental health center. *His mental conditions have since*

---

[8] The plaintiff self-reported auditory hallucinations, insomnia, feelings of hopelessness, low self-esteem, and weakness of the lower legs (a possible psychomotor disturbance) (R. 280); soon after, he reported suicidal thoughts. Dr. Khan diagnosed depression without stating whether he found these reports credible; but, if so, they may have satisfied part A of Listing 12.04, and the factors that reduced his Global Assessment of Function to 28 the following month (R. 277) may have satisfied subpart B of listing 12.04.

[9] In July 2003, the plaintiff told Sack that he had been caught with four marijuana seeds after being arrested for beating up his son-in-law (R. 287). He also told Khan that he was wrongly required to attend drug rehabilitation even though he had been "clean" for a year, and that this "confusion" was affecting his efforts to get custody of his daughter (R. 280). In September 2003, he apparently told another care provider that he was pleading guilty to possession of a methamphetamine lab (R. 262), and in November said that his wife was going to divorce him so she could get custody of her children back (R. 258). He apparently stopped living with his wife so that the Alabama Department of Human Resources would return her children to her (R. 320), but did not actually sever ties with her and said she would "wait for him" while he was in prison (R. 328, 355-56).
Review of the record in *United States v. Kaylor*, No. 03-CR-329 (N.D. Ala. 2004) suggests that the plaintiff missed his arraignment for the methamphetamine charges on July 10, 2003, and that a bench arrest warrant was issued for him on July 17, 2003, five days before he first sought treatment at the Chilton-Shelby Mental Health Center. This in turn suggests that he was less than candid about the "legal issues" that brought him to the Center. Some of the plaintiff's other statements to his treating specialists likewise do not match the remainder of the record. For example, the plaintiff told Dr. Khan that he had not worked since his accident in 1995 and was "on Disability" because of it (R. 280-81), but in his application for benefits he stated that he had worked until 2001 (R. 73) and was *not* receiving disability benefits (R. 64-65, 338).

7

> *improved with psychotherapy and medication treatment.* The objective medical evidence of record has reflected only sporadic complaints and changes in his psychotropic medications due to adverse medication side effects [R. 251-336].

(R. 25-26) (emphasis added). Thus, the ALJ did not discount the opinions of Khan and Sack that the plaintiff had severe psychiatric problems from July-November 2003, but instead based his opinion on evidence that the plaintiff had improved by February 2004, less than twelve months later.[10] In discussing the improvements, the ALJ stated that

> ...by December 2003 and January 2004, he appeared to be doing better and his medications were noted to be working. He missed two subsequent therapy sessions in January 2004 and February 2004. A group therapy session on February 11, 2004, revealed the claimant to have appropriate affect, good appetite, normal orientation and calm motor activity. No thought or perceptional disturbances were indicated. His mood was noted to be expansive. He seemed to be resigned to receiving a prison term. He was given a Global Assessment of Functioning (GAF) score of 58.

(R. 23). Independent review of the record supports these findings (R. 320-30).[11] The ALJ adequately supported his finding that the plaintiff's psychological problems from 2003 did not render him disabled in 2004.

Furthermore, the ALJ likely erred in the plaintiff's favor by considering these problems at all. Under 20 C.F.R. § 404.1506(a), the ALJ may not consider any impairment

---

[10] An impairment will not support disability benefits unless it lasts, or is expected to last, at least twelve months. 20 C.F.R. § 404.1509.

[11] The court notes that the plaintiff's GAF score dropped from 40-50 in July 2003 (R. 279, 281, 286) to 28 in August 2003 (R. 277), but rose to 50-55 by January 2004 (R. 328, 330) and to 58 in February (R. 320). The court further notes that the plaintiff consistently tied his homicidal thoughts to anger at his judges and his suicidal thoughts to his upcoming sentencing hearing, so that his becoming "resigned to receiving a prison term" was significant.

that arises in connection with the plaintiff's commission of a felony.[12] The evidence here strongly suggests that the plaintiff's depression and anxiety were brought on by the plaintiff's impending prosecution and sentencing for conspiracy to produce methamphetamine. If an impairment caused by felony prosecution arises "in connection with" the felony,[13] then the plaintiff's psychological impairments are barred from consideration. Because the ALJ properly supported his finding that the plaintiff's condition improved by February 2004, the court need not reach this issue. The decision of the ALJ is not due to be reversed on this ground.

## B. Consultative Examination

The plaintiff argues that the ALJ should have ordered consultative X-rays and

---

[12] "In determining whether you are under a disability, we will not consider any physical or mental impairment, or any increase in severity (aggravation) of a preexisting impairment, which arises in connection with your commission of a felony...if you are subsequently convicted of this crime." 20 C.F.R. § 404.1506(a).

[13] The court has been unable to locate controlling authority on the meaning of these words in this regulation. However, the court notes that the phrase "in connection with" usually receives a broad interpretation. *See United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) (firearms in car with counterfeit money were possessed "in connection with" counterfeiting even though they did not facilitate the crime itself; phrase "in connection with" merely provided context of possession); *S.E.C. v. Zandford*, 535 U.S. 813, 819-20 (2002) (adopting broad reading of deception "in connection with" the sale of securities); *Jacksonville Terminal Co. v. Railway Express Agency, Inc.*, 296 F.2d 256, 259 (5th Cir. 1961) (in indemnity clauses, phrase "in connection with" includes, but is not limited to, causal connections); *Thunder Marine, Inc. v. Brunswick Corp.*, 2006 WL 1877093 at *7 (M.D. Fla. July 6, 2006) (phrase "in connection with" is "considerably broad" in forum selection clauses). Moreover, the obvious intent of 20 C.F.R. § 404.1506(a) is to prevent a claimant from receiving payments for a disability incurred because of his own felonious conduct. This purpose, and the use of the traditionally broad phrase "in connection with," suggest that the regulation covers the natural consequences of a felony, including criminal prosecution. *See Young-El v. Apfel*, 2000 WL 190237 at *1, *5 (E.D. Pa., Feb. 4, 2000) (when plaintiff exhibited signs of depression, including suicide attempt, between confession to crime and conviction, record contained the "inescapable suggestion" that his disability was caused by his commission of the felony and, thus, was covered by § 404.1506). However, it does not cover disabilities incurred or aggravated in connection with incarceration. 20 C.F.R. § 404.1506(b).

diagnostic testing of the plaintiff's back (pl. br. 8).  However, the ALJ has "complete discretion" over consultative testing, and such tests are required only when the record as a whole is not sufficient to support an informed decision. 20 C.F.R. § 1519a(b); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).  In this case, the record already contains a consultative physical examination by Dr. Workman in 2002 (R. 21, 221-25), another examination by Dr. Strickler in 2003 (R. 22, 243-45), and the results of an emergency room visit for back pain in 2003 (R. 22, 307-09).[14]  This evidence was sufficient to support an informed decision, and the ALJ adequately articulated his reasons for finding the plaintiff's back and ankle problems not disabling (R. 25).   The decision of the ALJ is not due to be reversed on this ground.[15]

**V. Conclusion**

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  A separate order will issue.

DONE, this 24th day of October, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[14] A report from August 2003 included a flat and upright abdomen X-ray examination, which showed "no abnormal calcification" and "no bone abnormality" (R. 318).

[15] At the hearing, the ALJ expressed an interest in sending the plaintiff for another consultative examination (whether physical or psychological, he did not say), but was concerned that it was impractical due to the plaintiff's pending incarceration (R. 375).  The court nonetheless concludes that the record sufficiently supports the ALJ's findings on physical and mental impairments.